## APPEAL OF FRANCIS LEE.

### [ESTATE OF MARIA L. LEE.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 17, 1889—Decided January 28, 1889.

1. In the distribution of the estate of a deceased wife, if the husband elect to take against the will of the wife, he may take but the one third of her entire estate, if she leave children, and the one half, if she leave no children.
2. Wherefore, if but a portion of the wife's estate be disposed of by her will and she leave no children, the husband may not have the whole of the undisposed of portion, as of an intestacy, and the one half of that disposed of by the will in addition.
3. Section 9, act of April 11, 1848, P. L. 536, and § 1, act of May 4, 1855, P. L. 430, construed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 82 July Term 1888, Sup. Ct.; court below, No. 154 October Term 1887, O. C.

On November 14, 1887, the account of David Lee and Julia S. Goodfellow, administrators c. t. a., of the estate of Maria L. Lee, deceased, was called for adjudication before HANNA, P. J., when the facts shown were as follows:

Maria L. Lee died April 30, 1886, leaving a husband, Francis Lee, but no issue, and having made her last will and testament duly admitted to probate, May 8, 1886. All the property of the testatrix at the time of her death was disposed of by specific bequests in her will, with the exception of a policy of insurance which in May, 1866, the husband had taken out on his own life, and on May 7, 1874, had assigned to his wife, "Maria L. Lee and our children." This policy of insurance was not referred to in the will, specifically, nor was there a residuary clause embracing it.

Francis Lee, the husband, elected to take against the will of the testatrix claiming such share in her estate as she would have taken in his estate had he died intestate before her, to wit, one half. The auditing judge ruled that the husband was entitled to the whole of the personal estate of the wife of which she died intestate, and therefore awarded the policy of insurance to him. The fund for distribution, not embracing the value of the policy, and less the costs of administration and of audit, was then awarded, one half to the husband, and one half to the payment of the legacies, which were abated proportionately, so that each legacy was paid less than 50 per cent of the sum bequeathed.

To this adjudication Louisa Lee Goodfellow, a legatee, excepted that the auditing judge erred:

1. In awarding to Francis Lee one half of the property passing under the will, in addition to the whole of the property as to which the testatrix died intestate.

2. In not ascertaining the share of Francis Lee in the following manner: By first awarding him one half of the entire estate left by the testatrix; second, awarding to the legatees whatever is given to them under the terms of the will if the estate is sufficient; and third, awarding to Francis Lee any surplus that may remain.

3. In compelling an abatement of the legacy given to Louisa Lee Goodfellow, when such abatement was not necessary to give Francis Lee one half of the entire estate left by the testatrix.

The foregoing exceptions having been argued before the court in banc, the court, PENROSE, J., filed the following opinion and decree:

The act of 1848 preserving the ownership of personal property to women, notwithstanding marriage, conferred also upon married women the absolute right of disposing of both real and personal estate by will executed as directed by the act. This necessarily took from the husband the right to curtesy except in cases of intestacy; and thus the wife's power, with regard to testamentary disposition of her estate, was made greater than that possessed by the husband, whose will could not deprive her of the estate, in both real and personal property, given to her by the intestate laws. The act of May 4, 1855, was passed to remedy this. It enacted that the power of any married woman to bequeath or devise her property shall be restricted as regards the husband, to the same extent as the husband's power so to dispose of his property is restricted, as regards the wife, namely : "so that any surviving husband may against her will elect to take such share and interest in her real and personal estate, as she can when surviving elect to take against his will in his estate, or otherwise to take only her real estate as tenant by the curtesy."

In the present case the testatrix disposed of only specific portions of her personal estate, leaving all the rest to pass to her husband under the intestate laws, there being no children or issue. The husband thus having what may amount to much more than any share which his wife could have taken in his estate, claims the right also to take against the will one half of the property disposed of by it. We do not think the act is to be so construed. It was intended to restrain the power which the wife previously had of disposing of her estate to the entire exclusion of her husband, and to confer upon the husband a right which is clearly defined. This right is not measured by the property passing under the will. It is to take against the will "such share and interest," not in the property so disposed of, but "in her real and personal estate," that is, her entire real and personal estate treated as a unit, "as she can when surviving take against his will," viz.: one third, where there are children, one half, where there are not. A wife under no circumstances can take against his will more than one half of her husband's estate, whether it passes under his will or not; and, by the express terms of the act, the husband can, as against her will, acquire no more than "such share." It could

not be contended, if the will had disposed of all the personalty, leaving the wife's lands to pass under the intestate laws, that the husband, after taking as tenant by the curtesy, could still in the very teeth of the act take against the will a share of the personal estate, one half or one third as the case may be, also. The testatrix is presumed to have known the law, and to have made her will in view of it; and, in suffering perhaps the largest part of it to pass to her husband under the intestate laws, she no doubt supposed that her disposition of the trifling proportion not so passing could not be disturbed.

The question is not affected by the cases which hold that a wife taking under her husband's will is not prevented thereby from taking her share of property as to which he died intestate: Carmen's Est., 11 W. N. 95; Reed's Est., 82 Pa. 428; Grim's App., 109 Pa. 392. The estoppel caused by taking under the will, can only in the nature of things apply to that which the will undertakes to dispose of, and does not extend to a right conferred by act of assembly, as to property not embraced in it at all; while the husband's right to take against the wife's will, since the act of 1848, exists only by the act of 1855, and cannot go beyond it. Of course the interest of the husband, under the intestate laws, in property not included in the wife's will, cannot be affected or reduced by the disposition which it makes of the property which is included; but, in seeking to exercise the right which the act gives him, if it appear that he already has a share of her real or personal estate equal to or in excess of the share which she would take in his estate, if taking against his will, or that, under the alternative choice given to him by the act, he holds the real estate as tenant by the curtesy, under what authority is he to be permitted to take more? The case is like that of a widow seeking the benefit of the exemption law when she already holds property which she has not accounted for: Lyman v. Byam, 38 Pa. 475; or of a widow at common law asking for dower out of lands held by knight service when she has in her control as guardian in socage other lands applicable for the purpose, Dowment de la plus belle. What is already held must first be applied towards the share given by the act, and the right to take against the will confined to making up the balance.

The value of the estate passing under the intestate laws has not been ascertained and the account must therefore go back to the auditing judge for this purpose.   If it should be found to equal one half of the entire personal estate, the dispositions made by the will will not be altered ; if less than one half, the alteration will only be to the extent required to give him that proportion.

It is proper to call attention to the fact that the collateral inheritance tax upon the legacies has been overlooked.   This will be provided for by the re-adjudication.

Exceptions sustained, and account referred back for further proceedings in conformity with this opinion.

Thereupon a supplemental adjudication was made, filed and confirmed, wherein, in accordance with the foregoing opinion, the value of the policy was ascertained, the accountants surcharged therewith, and a distribution made awarding to the surviving husband one half the net balance of the entire estate, and the remaining half to the legatees.

Thereupon, Francis Lee took this appeal, alleging in substance, that the court erred in sustaining the exceptions to the first adjudication, and in awarding any portion of the value of the policy to the legatees.

*Mr. W. Horace Hepburn*, for the appellant:

1. By § 9, act of April 11, 1848, P. L. 536, it is provided that " when any married woman possessed of separate personal property, as aforesaid, shall die intestate, . . . . said estate shall be distributed as follows: if such married woman shall have no children nor the descendants of such living, the husband shall be entitled to such personal estate absolutely," etc. And in such case the husband takes his wife's personal estate without administration: Moyer's App., 16 Pa. 407.   Section 1, of the act of May 4, 1855, P. L. 430, restricting the power of a married woman to dispose of her property by will, " namely, so that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate as she can, when surviving, elect to take against his will in his estate," did not repeal the act of April 11, 1848, but provided merely a mode of distribution in cases of testacy: Dickinson v. Dickinson, 61 Pa. 406.

Opinion of the Court.

2. There can be no election between property given by a will, and property actually given by the intestate laws; because, if the husband does not get the latter, there is no owner provided either by the law or by the will. The act of 1855, provides a mode of distribution of decedent's estates coming within its provisions, just as clearly as the act of 1848 declares that the husband shall have the whole of the intestate personal property, under the circumstances of this case. In Reed's App., 82 Pa. 431, it was held that a widow was not barred from her one third in the intestate property of her husband, notwithstanding the fact that she had elected to take under the will. The election of the widow only applies to the provisions of the will, not to that part which is not affected by the law relating to cases of intestacy: Carmen's Est., 11 W. N. 95. The act of April 11, 1848, so far as it relates to the distribution of decedent's estates, is but a supplement to the intestate act of April 8, 1833, P. L. 315, and the intent of the legislature to distribute the intestate property to the next kin, in cases of partial intestacy, is manifest.

*Mr. Henry C. Brown*, for the appellee :

At common law, a married woman could make no will against the consent of her husband. Section 7, act of April 11, 1848, P. L. 537, gave her unlimited power to dispose of her whole property by will to any person. If there had been no subsequent legislation on this subject, the husband would have had no right to claim anything against his wife's will. But by § 1, act of May 4, 1855, P. L. 430, a change was made, but it extended no further than to allow the husband the same share in his wife's estate, notwithstanding her will, as she could take in his estate, notwithstanding his will. By § 11, act of 1848, and § 1, act of April 8, 1833, P. L. 316, that share, when there are no children, is one half; that is, one half of her estate in its entirety.

PER CURIAM :

The opinion of the learned judge of the Orphans' Court is so clear and satisfactory, that we affirm his decree for the reasons given by him.

Decree affirmed and the appeal dismissed, at the costs of the appellant.